# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FOREMOST INSURANCE COMPANY GRAND RAPIDS, MICHIGAN, : : Plaintiff, : : v. : : TRACY BUFFLAP, : : Defendant. | Civil No. 1:23-CV-02023 <br><br><br><br><br><br><br> Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court are cross-motions for summary judgment, both of which ask the court to determine whether Defendant Tracy Bufflap ("Bufflap") is entitled to underinsured motorist ("UIM") coverage under the antique automobile insurance policy provided by Plaintiff Foremost Insurance Company Grand Rapids, Michigan ("Foremost"). (Docs. 27 and 30.) For the reasons that follow, Foremost's motion will be granted and Bufflap's motion will be denied.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Bufflap was involved in a car accident on September 20, 2022. (Doc. 29, ¶ 1.) At the time, Bufflap was driving a 2006 Nissan 350Z. (*Id.* ¶ 2.) After

---

[1] In accordance with the relevant standard for deciding a motion for summary judgment, the court relied on the uncontested facts, or where the facts were disputed, viewed the facts and deduced all reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008). For convenience and because the court reviews Foremost's motion first, the court will cite to the undisputed facts in Foremost's statement of undisputed facts. (Doc. 29.) Upon review of both parties' statements of undisputed facts, they are substantially similar.

1

recovering from the tortfeasor's policy, Bufflap also recovered under a Geico insurance policy issued to him which covered the 2006 Nissan he was driving at the time of the accident. (*Id.* ¶ 3.) As this was insufficient to cover the costs associated with his injuries, Bufflap sought to recover UIM benefits under the Foremost antique automobile policy ("Foremost policy"). (*Id.* ¶ 4.)

The Foremost policy insured an antique automobile owned by Bufflap, a 1969 Plymouth Roadster. (*Id.* ¶ 7.) The policy included UIM coverage with a $300,000 limit. (*Id.* ¶ 9.) The Foremost policy had an endorsement entitled "Underinsured Motorists Coverage–Pennsylvania (Stacked)." (*Id.* ¶ 10; Doc. 27-2, p. 32.)[2] This endorsement provides that Foremost "will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'underinsured motor vehicle' because of 'bodily injury'[.]" (Doc. 27-2, p. 32.) In section B of this endorsement, the policy defines an 'insured,' in relevant part, as "1. you while 'occupying' 'your covered auto.'" (*Id.*) "Your covered auto" is defined in the definitions section of the policy as " 1. any 'antique vehicle' or 'classic vehicle' shown in the Declarations[.]'" (*Id.* at 8.) Foremost does not dispute that it charged an additional premium of $1.00 for stacked coverage. (Doc. 32, ¶ 15; Doc. 35, ¶ 15.) Bufflap did not sign a stacking waiver for the Foremost policy. (Doc. 32, ¶ 14; Doc. 35, ¶ 14.)

---

[2] For ease of reference, the court uses the page number contained in the CM/ECF header.

On August 11, 2023, Foremost denied Bufflap's request for stacked UIM coverage. (Doc. 32, ¶ 17; Doc. 35, ¶ 17.) After correspondence from Bufflap's counsel, Foremost maintained its denial of coverage, but granted a consent to settle and waived subrogation of rights regarding the tortfeasor's settlement as well as the Geico settlement. (Doc. 32, ¶ 21.; Doc. 35, ¶ 21.)

Foremost filed the instant action via complaint on December 6, 2023. (Doc. 1.) Foremost asked the court to enter declaratory judgment that Bufflap is not entitled to benefits under the Foremost policy because he does not meet the definition of "insured" in the UIM endorsement. (*Id.* at 10.) Bufflap filed an answer and counterclaim on February 13, 2024. (Doc. 6.) The counterclaims ask the court to enter declaratory judgment that Bufflap was entitled to UIM coverage under the Foremost policy, as well as allege a breach of contract claim against Foremost for denying Bufflap's claims for stacked UIM coverage. (Doc. 6, ¶¶ 25–82.)

Foremost filed a motion to strike portions of the counterclaims on March 1, 2024. (Doc. 11.) The motion was fully briefed, and the court granted the motion in part and denied the motion in part, with the court striking some of Bufflap's damages allegation. (Doc. 24.) Foremost answered the counterclaims on July 3, 2024. (Doc. 26.) Thereafter, on July 31, 2024, both parties filed cross motions for

summary judgment. (Docs. 27, 30.) Both motions are fully briefed and ripe for disposition.

## JURISDICTION AND VENUE

The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because plaintiff is diverse from defendant and the amount in controversy exceeds $75,000.[3] Venue is proper in this court under 28 U.S.C. § 1391(b) because Bufflap resides within the Middle District of Pennsylvania.

## STANDARD OF REVIEW

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

---

[3] Plaintiff is a corporation organized under the laws of the state of Michigan, with a principal place of business in Michigan. (Doc. 1, ¶ 1.) Tracy Bufflap is a citizen of Pennsylvania. (*Id.* ¶ 2.)

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

5

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

The court turns first to Foremost's motion for summary judgment, which raises two arguments. First, Foremost argues that "Bufflap cannot present a viable claim for UIM benefits under the Foremost policy, since he does not satisfy the very specific definition of 'Insured' contained in the UIM Endorsement[.]" (Doc. 28, p. 13.) According to Foremost, the UIM endorsement defines "insured" as "you while 'occupying' 'your covered auto.'" (*Id.*) Therefore, because Bufflap was not driving the car covered by the Foremost policy, he is not considered an "insured" under the policy and cannot stack UIM benefits from the Foremost policy with other UIM benefits received on a different policy. (*Id.* at 13, 14.)

6

Foremost points to various federal cases supporting its conclusion.  First, Foremost cites to *Grudkowski v. Foremost Ins. Co.*, No. 3:12-CV-1847, 2013 WL 816666, (M.D. Pa. March 5, 2013), in which the Middle District of Pennsylvania held that "as a matter of Pennsylvania law, insurers may lawfully limit UM/UIM coverage under antique automobile policies[.]" (*Id.* at 14, 15.)  Foremost specifically notes the *Grudkowski* court's holding that "similarities between the policies at issue here and those at issue in *Corbett*[4] and *Perry*[5] indicate that the policies sold by Foremost complied with Pennsylvania law." *Id.* at 20.  The Third Circuit affirmed the district court and noted that the policy sold by Foremost was "permissible under Pennsylvania's MVFRL[.]" *Grudkowski v. Foremost Ins. Co.*, 556 Fed. Appx. 165, 169 (3d Cir. 2014).

Turning to Foremost's second argument, regarding public policy, Foremost discounts Bufflap's reliance on an opinion from the Court of Common Pleas of

---

[4] *St. Paul Mercury Ins. Co. v. Corbett*, 630 A.2d 28 (Pa. Super 1993) is a Pennsylvania Superior Court case that held that provisions within an antique automobile insurance policy that limited UM/UIM coverage were enforceable because these policies limitations were clear and unambiguous, and that the limitations were not contrary to public policy because "[i]f coverage is permitted under the circumstances presented here, the distinctions between antique automobile insurance and other types of insurance will be eradicated and premiums for antique vehicle insurance will be on par with personal automobile insurance." *Id.* at 30–33.

[5] *St. Paul Mercury Ins. Co. v. Perry*, 227 F. Supp. 2d 430 (E.D. Pa. 2002) is an Eastern District of Pennsylvania case which held that the antique auto policy at issue "was specifically designed to cover only a limited use antique automobile[,]" and that the defendants "paid dramatically lower premiums for UM coverage of their antique automobile than they did for their regularly used vehicles." *Id.* at 435.  Thus, the court held that the "plain and unambiguous language [of the policy] should be given its clear meaning.  Therefore, since Defendants were not occupying the covered vehicle at the time of the accident, they are not entitled to UM benefits." *Id.*

7

Philadelphia County, *Reynolds v. Essentia*, No. 2108801568, 2023 WL 7708499 (Pa. Com. Pl. Aug. 23, 2023).  (Doc. 28, pp. 19–21.)  Foremost argues "[t]o the extent the MVFRL discusses UM/UIM coverage under a policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured, the injured person must still meet the definition of 'insured' in the particular policy for those particular UIM benefits."  (*Id.* at 21.)

In response to Bufflap's argument that the definition of "insured" operates as a *de facto* stacking waiver, Foremost argues that the definition is not a waiver because Bufflap could still stack benefits with other policies if he were involved in an accident in the antique auto.  (*Id.* at 23.)  Foremost also argues that *Gallagher v. GEICO Indemnity Co.*, 201 A.3d 131 (Pa. 2019), the Pennsylvania Supreme Court case that Bufflap primarily relies on, was a narrow decision limited to the specific facts before the Pennsylvania Supreme Court, and therefore, this court should not extend the holding in *Gallagher* to the set of facts present in this case.  (*Id.* at 24.)  Finally, Foremost argues that Bufflap's breach of contract claim should be dismissed because he has failed to show he is entitled to damages and therefore, cannot prove his claim.  (*Id.* at 25.)

In opposition to Foremost's motion for summary judgment and in support of his own motion for summary judgment, Bufflap frames the issue in this case as a stacking issue, rather than an issue of whether he meets the definition of "insured."

(Doc. 31, pp. 14, 15.)  Bufflap begins with an explanation of the framework of the MVFRL, and notes that under the MVFRL, insurance providers are required to offer underinsured motorist coverage, but purchase of this coverage is optional. (Doc. 31, p. 12.)  Bufflap also explains that "[t]he MVFRL mandates that stacking of UIM coverage is the default rule and that while an insured may choose to waive this coverage, an Insurer must first obtain a valid signed waiver form as prescribed by the MVFRL[.]"  (*Id.* at 13.)  Bufflap argues that, because he has already sought UIM coverage from the policy of the vehicle involved in the accident, as required by statute, that this case is a "stacking" case, rather than a case resolving whether he meets the definition of "insured."  (*Id.* at 14, 15.)

With this framework in mind, Bufflap argues that the Pennsylvania Supreme Court's decision in *Gallagher* is instructive as to whether he is entitled to stacked UIM benefits.  In *Gallagher*, the Supreme Court of Pennsylvania held that a household exclusion clause impermissibly deprived Gallagher of stacking coverage that he had paid for when he purchased both a motorcycle policy with stacked UIM coverage, as well as an automobile policy with stacked UIM coverage.  *Gallagher*, 201 A.3d at 133.  Bufflap also points to the Pennsylvania Supreme Court's decision in *Donovan v. State Farm Mutual Automobile Ins. Co.*, 256 A.3d 1145 (Pa. 2021), in which the court held that the form provided in the statute only served to waive intra-policy stacking, not inter-policy stacking.  *Id.* at 1157.  Bufflap

9

argues that *Donovan* underscores the importance of mandatory stacking in the MVFRL. (Doc. 31, pp. 17, 18.)

Bufflap also distinguishes other recent Pennsylvania Supreme Court cases that upheld exclusions which operated to prohibit stacking. For example, in *Rush v. Erie Ins. Exch.*, 308 A.3d 780 (Pa. 2024), the Pennsylvania Supreme Court held that a regular use exclusion was valid when it operated to preclude an injured plaintiff from recovering under his personal automobile policy when he was injured in his work car. *Id.* at 801. Bufflap argues that *Rush* is distinguishable from the instant case because, in *Rush*, the court interpreted § 1731,[6] rather than § 1738.[7] (Doc. 31, p. 19.) Bufflap points to Justice Wecht's concurring opinion making this same distinction. (*Id.* at 20.)

Ultimately, Bufflap concludes that "while Foremost does not rely upon a household exclusion… or a regular use exclusion…but rather a definition of 'insured' contained in a UIM endorsement, Pennsylvania courts have provided sufficient guidance as to how cases involving similar definitions should be

---

[6] Section 1731 "governs the scope of UIM coverage in Pennsylvania[,]" and requires insurers to offer uninsured and underinsured motorist coverage. *Rush*, 308 A.3d at 783 (citing 75 PA. CON. STAT. § 1731.) Insureds can waive this coverage by signing the waiver form outlined in the section. 75 PA. CON. STAT. § 1731(c).

[7] Section 1738 provides that when an insured has one or more vehicles on one or more policies with UM/UIM coverage, the stated coverage limit "shall apply separately to each vehicle so insured. The limit of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured." 75 PA. CON. STAT. § 1738(a). This section allows insureds to "stack" UM/UIM benefits.

10

decided, at least in Section 1738 cases such as this one." (*Id.* at 21.) Bufflap argues that the definition of insured prevents him from being able to "utilize the stacked coverage he paid for since the Foremost policy is a single vehicle policy and if he were occupying the insured single antique automobile at the time of the collision, this would be a section 1731/1733 case as opposed to a Section 1738 case[.]" (*Id.* at 22.) This is so because if he was injured in the covered auto, any claim for recovery would be a "normal UIM" claim, not a stacking claim. (*Id.*)

Bufflap also argues that Foremost's definition of "insured" impermissibly narrows the definition of "insured" in the MVFRL. (*Id.*) Bufflap cites to *Reynolds*, 2023 WL 7708499 and *Prudential Property and Cas. Ins. Co. v. Colbert*, 813 A.2d 747 (Pa. 2002) to argue that when a contract term conflicts with a statute, that term must be held void, invalid, and unenforceable. (*Id.* at 24.) In *Colbert*, the Pennsylvania Supreme Court held that the definition of 'insured' in an insurance contract that conflicts with the MVFRL "must yield, even though it is clear and unambiguous." *Colbert*, 813 A.2d at 751. Bufflap argues that the definition of insured contained in the Foremost policy is narrower than the definition provided by the MVFRL, and thus, "it should be held to be void, invalid, and unenforceable." (Doc. 31, p. 24.)

The court will turn first to the issue of whether the definition of "insured" contained in the antique automobile policy deprives Bufflap of stacked UIM

coverage. The Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL") provides that:

> No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth . . . unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 . . . . Purchase of uninsured motorist and underinsured motorist coverages is optional.

75 PA. STAT. AND CONS. STAT. § 1731. The MVFRL also provides that:

> Where multiple policies apply, payment shall be made in the following order of priority:
>
> (1) A policy covering a motor vehicle occupied by the injured person at the time of the accident.
>
> (2) A policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured.

*Id.* § 1733. Finally, the MVRL allows for "stacking" insurance coverages between various policies. Specifically:

> When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

*Id.* § 1738(a). This coverage can be waived by the insured. *Id.* § 1738(b). Thus, the structure of UM/UIM coverage is as follows: (a) insurance companies are required by law to offer UM/UIM coverage (*id.* § 1731); (b) purchase of this coverage is optional (*id.*); (c) when a person has multiple policies which offer

12

UM/UIM coverage, the person seeking benefits is first required to seek recovery from the policy covering the vehicle that was in the accident, then they may seek coverage through a different policy on which they are an insured (*id.* § 1733); (d) when a person seeks to recover UM/UIM coverage on more than one policy, they shall be entitled to "the sum of the limits for each motor vehicle as to which the injured person is an injured" (*id.* § 1738(a) – this is referred to as "stacking"); and (e) the ability to "stack" UM/UIM coverage can be waived (*id.* § 1738(b)).  The Pennsylvania Supreme Court has held that stacking UM/UIM coverage is the "default." *Gallagher*, 201 A.3d at 138.

Foremost has presented the court with persuasive precedent regarding antique automobile policies that is squarely on point with the case before us.  In *Grudkowski*, the Middle District of Pennsylvania considered whether a similar definition to the definition at issue here rendered stacked UM/UIM coverage illusory because requiring an insured to be in the "covered auto" at the time of the accident meant there can never be inter-policy stacking benefits under the policy. *Grudkowski*, 2013 WL 816666 at *3.  The district court held that "as a matter of law, [insurers] may sell antique automobile insurance policies in Pennsylvania which do not allow for the stacking of coverages." *Id.* at *4.  The district court relied on cases involving antique auto policies, which examined "the reasonable expectations of the insured." *Id.* at *6 (citing *St. Paul Mercury Ins. Co. v. Corbett*,

630 A.2d 28, 29 (Pa. Super. 1993)).  The district court also noted that "while reasonable expectations of the insured are the focal point in interpreting the contractual language of insurance policies, 'an insured may not complain that his or her reasonable expectations were frustrated by [insurance] policy limitations which are clear and unambiguous.'" *Id.* (citing *Corbett*, 630 A.2d at 29)).  Finally, the *Grudkowski* district court noted that antique auto policies "are issued to serve functions distinct from that of personal automobile policies, which is what allows insurers to charge lower premiums for antique automobile policies[,]" and requiring insurers to provide stacked benefits with these policies would "caus[e] a drastic increase in premiums for this type of insurance." *Id.* at 9.

In an unpublished decision, the Third Circuit affirmed the district court and held that "the [MVFRL] contemplates stacking, but it can be waived, or limited by 'clear and unambiguous' policy language." *Grudkowski*, 556 Fed. App'x at 168 (citations omitted.)  With this understanding, the Third Circuit held that the plaintiff had failed to state a claim "[b]ecause the limited antique car insurance Foremost sold was permissible under Pennsylvania's MVFRL, and because the contract clearly limited coverage and [plaintiff] had not alleged that her insurance contracts with Foremost were breached in any other way[.]" *Id.* at 169.

Thus, the court must now consider whether the Pennsylvania Supreme Court's decision in *Gallagher* is more persuasive than the precedent provided by

Foremost.  In *Gallagher*, Plaintiff Gallagher, who was in an accident while driving his motorcycle, had two insurance policies, both with GEICO, providing insurance for his motorcycle and two other cars.  *Gallagher*, 201 A.3d at 132.  He had "opted and paid for stacked UM and UIM coverage when purchasing both policies."  *Id.* at 133.  GECIO paid Gallagher UIM benefits under his motorcycle policy, but denied his claim for stacked UIM benefits under his car policy because the car policy excluded coverage when an injury occurs in a vehicle that is not listed under the car policy.  *Id.*

The Supreme Court of Pennsylvania held that the "household vehicle exclusion" was "inconsistent with the unambiguous requirements Section 1738 of the MVFRL under the facts of this case insomuch as it acts as a *de facto* waiver of stacked UIM coverage provided for in the MVFRL, despite the indisputable reality that Gallagher did not sign the statutorily-prescribed UIM coverage waiver form."  *Id.* at 138.  In reaching this decision, the Supreme Court "examine[d] the interplay between provisions of the MVFRL and the Automobile policy[,]" and noted that "provisions of insurance contracts are invalid and unenforceable if they conflict with statutory mandates because contracts cannot alter existing laws."  *Id.* at 137.  The Court reasoned that "Gallagher decided to purchase stacked UM/UIM coverage under both of his policies, and he paid GEICO premiums commensurate with that decision[,]" and that "the household vehicle exclusion strips an insured of

15

default UM/UIM coverage without requiring an insurer to demonstrate, at a bare minimum, that the insured was even aware that the exclusion was part of the insurance policy." *Id.* at 138.

Since the Supreme Court of Pennsylvania decided *Gallagher*, both the Supreme Court and the Third Circuit have emphasized that "*Gallagher* was based upon the unique facts before [the Pennsylvania Supreme Court] in that case, and that the decision there should be construed narrowly." *Erie Ins. Exch. v. Mione*, 289 A.3d 524, 529 (Pa. 2023); *see also Mid-Century Ins. Co. v. Werley*, 114 F.4th 200, 209 (3d Cir. 2024).

With this guidance in mind, the court notes that the instant case is importantly different from *Gallagher* in two respects. First, *Gallagher* examines household exclusion language, rather than a definition of insured. The court is reluctant to expand the scope of *Gallagher* beyond the type of provision explicitly considered by the Supreme Court in light of the explicit holdings from both the Pennsylvania Supreme Court and Third Circuit that *Gallagher* should be confined to its facts. Second, Gallagher purchased both policies under which he was seeking to recover from the same company, whereas here, Bufflap had two different policies from two different insurance companies. Thus, unlike in *Gallagher*, Foremost was not on notice that it would potentially need to insure the vehicle that Bufflap was driving at the time of the accident. As the Third Circuit

noted in *Werley*, if this scenario is allowed, it could lead to higher insurance premiums because insurers would factor this broader coverage into calculating rates. *Werley*, 114 F.4th at 212. This "would undermine one of the MVFRL's recognized goals: 'to stop the spiraling costs of automobile insurance in the Commonwealth.'" *Id.* at 212, 213 (citing *Eichelman v. Nationwide Ins. Co.*, 711 A.3d 1006, 1010 (Pa. 1998)).

Because *Gallagher* is to be interpreted narrowly and the facts of this case are materially different from the facts of *Gallagher*, the court will apply *Grudkowski*. Although the definition of "insured" does operate to preclude stacking of UIM benefits when the policyholder is injured in a vehicle other than the covered auto, this is the coverage that Bufflap purchased. He is not being deprived of coverage that he purchased, rather, he purchased only a limited form of coverage. As the Third Circuit noted in *Werley*, the "underlying principle in *Gallagher* . . . [is] that the insureds are entitled to get what they paid for in terms of UIM coverage and stacking." *Werley*, 114 F.4th at 212. Here, Bufflap paid for a limited form of UIM coverage that only applied while he occupied the covered auto.

The court will also reject Bufflap's argument that the definition of "insured" in the Foremost policy is void as contrary to public policy. Bufflap relies on *Reynolds* and *Corbett* to argue that the definition of "insured" in the Foremost policy is contrary to public policy. (Doc. 31, pp. 22–24.) In *Reynolds*, 2023 WL

17

7708499, the Court of Common Pleas of Philadelphia County analyzed whether the definition of "insured" in an antique auto policy conflicted with the MVFRL and held that "[i]t may very well be that antique cars *should* have a special and unique status in the statutory scheme." *Id.* at *6. However, the common pleas court noted that neither the Pennsylvania Supreme Court nor the Pennsylvania Legislature "have carved out an exception for antique car policies. *Colbert,* as the more recent case, is binding on the Court." *Id.*

In *Colbert*, the Pennsylvania Supreme Court addressed a certified question from the Third Circuit asking "whether the definition of 'insured' in Prudential's automobile insurance policy . . . impermissibly narrows and conflicts with the statutory definition of 'insured' as set forth in the MVFRL." *Colbert*, 813 A.2d at 749. The person seeking coverage in *Colbert* was the son of the policyholder, and the general-use automobile policy at issue specifically defined "insured" as the policy holder and a resident relative while using the car. *Id.* at 750. Conversely, the MVFRL includes spouse, other relatives, and minors residing in the household of the insured, and does not include any requirement that those family members be in the insured car. *Id.* at 740 (citing 75 PA. CON. STAT. § 1702.) The Supreme Court reasoned that "[n]othing in the MVFRL permits Prudential or any other insurer to diminish the MVFRL's definition of 'insured' and thereby provide coverage of a lesser scope than the MVFRL requires[,]" and held that the

18

definition of "insured" was "impermissibly narrow[] and conflicts with the plain language of the MVFRL." *Id.* at 751. Ultimately, the Supreme Court held that the "other household vehicle" exclusion contained in the policy was valid and not contrary to public policy. *Id.* at 755.

Foremost points to *Bish v. American Collectors Ins., Inc.*, No. 216-CV-01434, 2017 WL 956651 (W.D. Pa. March 13, 2017), in which the Western District of Pennsylvania considered the same arguments regarding an antique automobile policy and held that defining "insured" as one occupying the covered auto in an antique automobile policy is not contrary to the MVFRL because "UIM coverage can be limited to clear and unambiguous policy limitations." *Id.* at * 4 (citing *St. Paul Mercury Ins. Co. v. Mittan*, No. CIV.A. 0-5372, 2002 WL 31928446, at * 5 (E.D. Pa. Dec. 31, 2002)). The *Bish* court relied on cases upholding the same policy limitations in an antique auto policy, and distinguished *Colbert* because it did not "involve the issue of defining 'insured' under an antique automobile insurance policy as a person 'occupying' the vehicle at the time injuries are sustained." *Id.* at *5.

Here, the court will follow the reasoning of *Bish* because it examines the exact issue before the court–the definition of "insured" in an antique automobile policy. As noted above, allowing insurers to limit coverage in antique auto policies is consistent with the policy objectives of lowering costs contained in the

19

MVFRL.  *See Werley,* 114 F.4th at 212.  Based on the same rationale stated in *Bish*, the court will not invalidate the definition of insured in the Foremost policy.

In conclusion, Bufflap is not entitled to recover UIM benefits under the Foremost policy because he does not meet the definition of insured provided by the Foremost policy.  The court will grant Foremost's motion for summary judgment and enter declaratory judgment that Bufflap does not meet the definition of "insured" under the UIM endorsement and he is not entitled to UIM benefits under the Foremost policy.

Because Bufflap, in this factual scenario, is not an insured of the Foremost policy, there is no agreement between Bufflap and Foremost to provide UIM benefits in this case.  Therefore, Bufflap's breach of contract claim fails as a matter of law.  Accordingly, the court will deny Bufflap's motion for summary judgment and dismiss his counterclaim for declaratory judgment and breach of contract.

## CONCLUSION

In accordance with the foregoing, Foremost's motion for summary judgment is granted and Bufflap's motion for partial summary judgment is denied.  An appropriate Order follows.

s/Jennifer P. Wilson  
JENNIFER P. WILSON  
United States District Judge  
Middle District of Pennsylvania

Date:  November 26, 2024